IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3086-D

| | | |
|---|---|---|
| JORGE GALEAS JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| THEODIS BECK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On June 1, 2010, Jorge Galeas, Jr.[1] ("Galeas" or "plaintiff"), a state inmate incarcerated at Central Prison, filed this action pursuant to 42 U.S.C. § 1983 [D.E.1]. He seeks leave to proceed in forma pauperis under 28 U.S.C. § 1915 [D.E. 2]. On June 14, 2010, Galeas filed a motion in support of his in forma pauperis application [D.E. 4]. On October 28, 2010, Galeas filed a declaration for entry of default [D.E. 5]. As explained below, the court dismisses the complaint as frivolous and denies plaintiff's motion to proceed in forma pauperis and his motion for entry of default.

I.

In reviewing an in forma pauperis application, a court "shall dismiss" any case that is "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A case is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). The standard used to evaluate the sufficiency of the pleading is flexible, and

---

[1] The North Carolina Department of Correction ("DOC") spells plaintiff's last name as "Gevara." See, e.g., Compl. 11–12; N.C. Dep't of Corr., Offender Public Information, http://web apps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0655559 (last visited Apr. 11, 2011). The court uses the spelling provided by plaintiff.

a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not undermine the "requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–52 (2009); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

Galeas names as defendants eleven named and two unknown correctional officers and other staff at Pasquotank Correctional Institution ("PCI"), three high-level PCI officials (Anderson, Lassiter, and Harrell), one current high-level DOC official (Bennett), and one former high-level DOC official (Beck). Compl. 2–3, 10. Galeas alleges that on November 25, 2008, he was placed in disciplinary segregation at PCI and "told . . . to pack up [his] property because [he] was going to be transfer[red] in the morning to another facility and that they needed to do the inventory on [his] property." Id. at 3. Galeas alleges that he had six bags of property, four of which contained legal property and two of which contained personal property. Id. Defendant Skinner, a PCI sergeant, told Galeas "that [he] had to destroy 4 bags of . . . property because she said that by D.O.C. policy that [he] was allowed to have only 2 bags of property including legal material" and so "the other 4 bags were considered contraband" and had to be destroyed. Id. at 4. Galeas told Skinner DOC policy allowed him to have "more than 3 bags because [he] had some cases pending." Another correctional officer "showed [Galeas] a policy that states that [he] was allowed to have only 2 bags of property including legal mail." Id.

2

Galeas continued to disagree with Skinner's interpretation of the property policy, but Skinner continued to require him to destroy four bags of property or face "be[ing] placed again in segregation and . . . writ[ten] up for having contraband." Id. at 6. Shortly thereafter, a correctional officer provided Galeas with an inventory form to sign and took him to defendant Skinner's office. Galeas "asked [Skinner] many times . . . about [his] property in storage and [he] was told by her that everything was in [the inventory forms] and that everything was there." Id. Skinner would not allow Galeas to review his property again prior to signing the inventory form on the ground "that there was no time because [Galeas] was going to miss [his] transfer." Id. Ultimately, Galeas never signed an inventory form, and at the time of his transfer from PCI, was aware that two bags of property "were already missing." Id. at 6–7. When Galeas arrived at Bertie Correctional Institution, he "came to notice[] that [he] was missing 2 more bags and a ½ of property containing legal material and other items." Id. at 7. Galeas wrote to his mother to obtain copies of court papers and "friend's affidavits" relating to his criminal case, which she provided him. Id. On December 3, 2008, Galeas was transferred from Bertie Correctional Institution to Lanesboro Correctional Institution ("LCI"), "and upon transfer another bag of legal material [relating to his criminal case] was lost." Id. at 8.

Galeas "believe[s] that this misconduct was an intentional act against [him] by" PCI staff in retaliation for filing "a tort claim against" PCI staff members who "were responsible when [his] property was seized" in November 2007. Id. at 8. Galeas also describes the conduct of PCI staff as "negligen[t]" and "acting with laziness" and contends that it was "based on [his] race, color, origin, language, accent and religion." Id. at 8, 27. Galeas asserts that the destruction of his property violated his "rights to free speech, expression, denial to court access, liberty, life, property and equal protection of the laws," as well as due process. Id. at 8. Galeas further asserts "that the NCDOC and the employees at [PCI] are only a corrupt organization that hide their corruption to cover up their

3

mistakes and intentional acts[,] . . . . steal[] the property and legal documents in rev[e]nge for the grievances . . . filed against them[,] . . . . [and] back up each other violating the RICO Acts." Id. at 9.

Finally, Galeas alleges that he and two other inmates at LCI have been denied notary services and that LCI officials have "read and copied [their] legal documents." Id. at 42. Galeas asserts that "[t]his action by prison officials at [LCI] shows deliberate indifference and denial of prisoners' right of access to courts and discrimination in violation of the 1st, 8th and 14th Amendment to the United States Constitution and also violates North Carolina D.O.C., North Carolina Constitution and the RICO Act." Id. This portion of Galeas's complaint is signed by three LCI inmates. Id. at 43.

II.

Initially, the court addresses Galeas's claim of denial of access to the courts. Prisoners have a right to reasonable access to state and federal courts and to communicate with attorneys. See, e.g., Ex parte Hull, 312 U.S. 546, 549 (1941); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978) (per curiam). However, in order to state a claim for denial of access to court, the prisoner must show actual injury or that his efforts to pursue a legal claim were hindered. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–52 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006). Galeas states that as a result of the loss of his legal property, he "can't go back to court and prove [his] innocence because the most important legal papers were taken away from [him] intentionally for more than one time," compl. 39–40, but Galeas fails to explain how the loss of his legal property in 2008 has prevented him from challenging his conviction for over nine years. Moreover, Galeas states that his mother has been able to provide him with copies of lost legal documents. Accordingly, Galeas has failed to plausibly allege that he was denied access to court.

4

As for Galeas's claim that the confiscation of his personal property violates due process, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Here, an adequate post-deprivation remedy exist. See, e.g., Wilkins v. Whitaker, 714 F.2d 4, 6–7 (4th Cir. 1983). Because Galeas has a meaningful post-deprivation remedy available in state court, this claim fails. Moreover, to the extent Galeas alleges any defendant acted with negligence to deprive him of his property, the "Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986) (emphasis removed); see McIntyre v. Portee, 784 F.2d 566, 567 (4th Cir. 1986).

As for Galeas's claim that PCI staff took his property in retaliation for filing "a tort claim against" PCI staff members, the United States Court of Appeals for the Fourth Circuit has stated that

> in forma pauperis plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal to survive [frivolity review]. To hold otherwise would be to bring virtually every unpopular decision by state actors within the scope of a cause of action for retaliation. This would pose particular problems in the context of prison administration. Every act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct. The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.

Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). To survive frivolity review, Galeas "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Id. at 75. Galeas's allegations fail to allege that any defendant infringed any constitutionally protected right. Additionally, Galeas presents nothing more

5

than naked assertions of retaliation. Accordingly, the court dismisses Galeas's retaliation claim as frivolous.

As for Galeas's claim that the seizure of his property was "based on [his] race, color, origin, language, accent and religion," the equal protection clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Galeas has not stated that he was treated differently from any person with whom he is similarly situated. Although pro se litigants are held to less stringent pleading standards than attorneys, the court is not required to accept as true legal conclusions or unwarranted factual inferences. See, e.g., Iqbal, 129 S. Ct. at 1949–52; Twombly, 550 U.S. at 555; Coleman, 626 F.3d at 190. Galeas has not made plausible allegations to support his equal protection claim. See, e.g., Coleman, 626 F.3d at 190–91. Thus, Galeas has failed to state a claim upon which relief may be granted, and this claim is dismissed.

Next, Galeas claims "that the NCDOC and the employees at [PCI] are only a corrupt organization that hide their corruption to cover up their mistakes and intentional acts[,] . . . . steal[] the property and legal documents in rev[e]nge for the grievances . . . filed against them[,] . . . . [and] back up each other violating the RICO Acts." Id. at 9. The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, provides civil remedies "when a plaintiff has suffered an injury to his business or property as a result of a violation of section 1962." Alley v. Angelone, 962 F. Supp. 827, 832 (E.D. Va. 1997). To properly plead a RICO claim, a RICO plaintiff must plead that the defendants engaged in or conspired to engage in "(1) conduct (2) of an

6

enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.I v. Imrex Co., 473 U.S. 479, 496 (1985); US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317–18 (4th Cir. 2010). A RICO plaintiff also "must adequately plead at least two predicate acts of racketeering." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004). Here, Galeas's wholly conclusory RICO allegations contain no mention of predicate acts and are nothing more than mere "labels and conclusions." Twombly, 550 U.S. at 555; Giarratano, 521 F.3d at 304 n.5. Moreover, to the extent Galeas seeks to allege a conspiracy under section 1983, he must allege "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). Mere conclusory allegations of a conspiracy do not demonstrate the "meeting of the minds" element. See, e.g., Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). Galeas fails to plausibly allege a "meeting of the minds" between any of the named defendants to violate his constitutional rights. Twombly, 550 U.S. at 555; Giarratano, 521 F.3d at 304 n.5. Thus, Galeas has failed to state a claim on which relief may be granted, and this claim is dismissed.

As for Galeas's allegation that he and two other inmates at LCI have been denied notary services and that LCI officials have read and copied their legal materials, Galeas may not join his claims against officials at LCI to his claims against officials at PCI. Rule 20(a)(2) of the Federal Rules of Civil Procedure states:

> Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 20(a)(2) does not provide a license to join multiple defendants into

7

a single lawsuit where the claims against the defendants are unrelated. See, e.g., George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997); Saval v. BL Ltd., 710 F.2d 1027, 1031–32 (4th Cir. 1983); Robinson v. Johnson, No. 3:07CV449, 2009 WL 874530, at *1 (E.D. Va. Mar. 26, 2009) (unpublished); Showalter v. Johnson, No. 7:08cv00276, 2009 WL 1321694, at *4 (W.D. Va. May 12, 2009) (unpublished). Thus, to the extent Galeas seeks to assert any claims against officials at LCI, the court dismisses such claims without prejudice.

Finally, Galeas's claims against defendants Anderson, Lassiter, Harrell, Beck, and Bennett are based on a theory of respondeat superior. Respondeat superior, however, does not apply to suits brought pursuant to 42 U.S.C. § 1983. See, e.g., Iqbal, 129 S. Ct. at 1948; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n.58 (1978); cf. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Thus, Galeas's claims against defendants Anderson, Lassiter, Harrell, Beck, and Bennett are dismissed as frivolous.

III.

In his "motion in support of motion to proceed in forma pauperis," Galeas appears to challenge the June 4, 2010 order directing "monthly payments of 20 percent of the preceding month's income credited to the plaintiff's trust fund account" until his filing fee is paid in full [D.E. 3]. Galeas states that he "still ha[s] 5 more cases pending and if this court don't waive the fee in this action plaintiff will be harmed and his constitutional rights will not be protected because plaintiff will fail to respond to all the cases pending." Mot. 1. Galeas also states that the provisions of the PLRA do not apply to immigration detainees. Id. at 2.

By enacting the PLRA, "Congress required that indigent prisoners filing lawsuits be held responsible for the full amount of filing fees." Torres v. O'Quinn, 612 F.3d 237, 241 (4th Cir. 2010). Although the PLRA "caps the amount of funds that may be withdrawn from an inmate's trust

8

account at a maximum of twenty percent regardless of the number of cases or appeals the inmate has filed," id. at 252 (emphasis removed), Galeas has not alleged that LCI is deducting an excessive amount of money from his trust account. Moreover, Galeas is in the custody of the North Carolina Department of Corrections serving two consecutive 20-year sentences for First Degree Rape. See N.C. Dep't of Corr., Offender Public Information, http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0655559 (last visited Apr. 11, 2011). Thus, Galeas's contention that he is an immigration detainee exempt from the PLRA lacks merit. See Galeas v. Neely, No. 3:10cv599, 2010 WL 4975497, *1 n.2 (W.D.N.C. Dec. 1, 2010) (unpublished). Accordingly, the court denies Galeas's motion to proceed in forma pauperis.

IV.

In sum, because plaintiff failed to state a claim against any defendant on which relief may be granted, the court DISMISSES plaintiff's complaint as frivolous. The court DENIES Galeas's motion to proceed in forma pauperis [D.E. 4] and plaintiff's motion for entry of default [D.E. 5]. The Clerk of Court is DIRECTED to close the case.

SO ORDERED. This 12 day of April 2011.

JAMES C. DEVER III
United States District Judge